**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF ALABAMA**
**NORTHERN DIVISION**

| | | |
|---|---|---|
| **LINDA CHANDLER,** | * | |
| | * | |
| **Plaintiff,** | * | **CIVIL ACTION NO.  14-00242-B** |
| | * | |
| **vs.** | * | |
| | * | |
| **CAROLYN W. COLVIN,** | * | |
| **Commissioner of Social** | * | |
| **Security,** | * | |
| | * | |
| **Defendant.** | * | |

**ORDER**

Plaintiff Linda Chandler (hereinafter "Plaintiff") seeks judicial review of a final decision of the Commissioner of Social Security denying her claim for a period of disability, disability insurance benefits, and supplemental security income under Titles II and XVI of the Social Security Act, 42 U.S.C. §§ 401, *et seq.*, and 1381, *et seq.* On May 14, 2015, the parties consented to have the undersigned conduct any and all proceedings in this case. (Doc. 18). Thus, the action was referred to the undersigned to conduct all proceedings and order the entry of judgment in accordance with 28 U.S.C. § 636(c) and Federal Rule of Civil Procedure 73. Upon careful consideration of the administrative record and the memoranda of the parties, it is hereby **ORDERED** that the decision of the Commissioner be **AFFIRMED.**

I.   **Procedural History**

Plaintiff protectively filed an application for a period of disability, disability insurance benefits, and supplemental security income on May 14, 2010.  (Tr. 264).  Plaintiff alleged that she has been disabled since that date due to "headaches," "nerves," "sleeping disorder," and "nerve damage" to her hand. (Id. at 277).  Plaintiff did not allege a mental impairment and stated that she has never sought treatment for any mental condition, emotional problems, or learning problems.[1]  (Id. at 280).

Plaintiff's applications were denied and upon timely request, she was granted an administrative hearing before Administrative Law Judge Charles A. Thigpen (hereinafter "ALJ") on June 15, 2011.  (Id. at 45).  Plaintiff attended the hearing with her counsel and provided testimony related to her claims. (Id.).  On September 8, 2011, the ALJ issued an unfavorable decision finding that Plaintiff is not disabled.  (Id. at 95). On January 15, 2013, the Appeals Council remanded the case to

---

[1] Subsequently, Plaintiff's attorney arranged for Dr. Donald W. Blanton, Ph.D., to administer I.Q. testing on April 13, 2011. (Tr. 458).  As discussed herein, Dr. Blanton reported that Plaintiff obtained a full scale I.Q. score of 64 on the WAIS-IV, which placed her "in the mild range of mental retardation." (Id. at 460-61).  Dr. Blanton opined that the full scale score was a valid assessment of Plaintiff's current level of intellectual functioning, and that academic achievement testing further revealed that she is functionally illiterate.  (Id. at 461).

the ALJ for further consideration of Plaintiff's mental limitations, specifically including "evidence from a medical expert to clarify the nature and severity of claimant's impairment." (Id. at 102). On July 2, 2013, the ALJ conducted a second administrative hearing. (Id. at 31). Plaintiff attended the second hearing with her counsel and again provided testimony related to her claims. (Id.). A vocational expert ("VE") also appeared at the hearing and provided testimony. (Id. at 42). After the second hearing, the ALJ obtained a medical opinion from a reviewing medical expert, Dr. Sydney H. Garner, Psy.D, related to Plaintiff's alleged mental impairment. (Id. at 641). On November 8, 2013, the ALJ issued a second unfavorable decision finding that Plaintiff is not disabled. (Id. at 25). The Appeals Council denied Plaintiff's request for review on April 4, 2014. (Id. at 1). Thus, the ALJ's decision dated November 8, 2013, became the final decision of the Commissioner.

Having exhausted her administrative remedies, Plaintiff timely filed the present civil action. (Doc. 1). The parties waived oral argument on May 14, 2015, (Doc. 19), and agree that this case is now ripe for judicial review and is properly before this Court pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3).

## II.  Issue on Appeal

Whether the ALJ erred in rejecting the opinion of examining medical source Dr. Donald W. Blanton, Ph.D., and finding that Plaintiff did not meet Listing 12.05C?

## III. Factual Background

Plaintiff was born on November 3, 1969, and was forty-three years of age at the time of her second administrative hearing on July 2, 2013.  (Tr. 31, 34).  Plaintiff testified that she completed the tenth grade in high school and has had no further education.[2]  (Id. at 34).  Plaintiff's school records reflect that she was enrolled in regular classes while in school, and that she generally received C's and D's, with occasional F's. (Id. at 277-78, 308-09).  Her school records also reflect that she was not able to pass the reading, math, or language portions of the Alabama High School Graduation Examination; thus, she did not receive her high school diploma.  (Id. at 311).

At the administrative hearing in 2013, Plaintiff testified that she last worked in 2010 in the dietary department for a hospital.  (Id. at 35).  Plaintiff also testified that she worked in this position for one and a half years, and that she

---

[2] In her Disability Report dated June 8, 2010, Plaintiff stated that she completed the twelfth grade in high school on May 19, 1986.  (Tr. 277).

4

quit because of problems with her hand.[3] (Id. at 35, 459). Additionally, Plaintiff reported working five years as a dishwasher at a nursing home and working as a packer in a manufacturing plant. (Id. at 35, 267).

According to Plaintiff, she has a short attention span; however, she can follow written instructions most of the time, can follow spoken instructions "well," can finish what she starts, can get along well with authority figures, and can handle stress and changes in routine "well." Plaintiff also reported that she has never been fired or laid off from a job because of problems getting along with other people. (Id. at 289).

In her Function Report and in her testimony, Plaintiff stated that she lives with four of her children, walks, cooks, cleans, and does laundry for herself and her children, shops, and is able to pay her bills, count change, handle a savings account, and use a checkbook.[4] (Id. at 34, 283-86). Plaintiff also reported that she enjoys spending time with others every day and that she goes to church weekly. (Id. at 287).

---

[3] In her Disability Report dated June 8, 2010, Plaintiff stated that she stopped working in December 2009 because of "headaches," "nerves," "sleeping disorder," and nerve damage to her hand. (Tr. 277).

[4] Plaintiff subsequently testified at her hearing on July 2, 2013, that she does not have a checking account and has never written a check. (Tr. 36).

Additionally, Plaintiff reported that she does not need to be reminded to go places, nor does she need anyone to accompany her. (Id.). According to Plaintiff, she has a driver's license and drives,[5] but she had to take the oral examination four times before passing it. (Id. at 36, 286).

Plaintiff's medications include Hydrochlorothiazide (HCTZ) (for high blood pressure), Naproxen (for muscle spasms), Prilosec (for her "chest"),[6] iron (for anemia), Tylenol with codeine (for pain), and Xanax (for "nerves"). (Id. at 280).

## IV.  Analysis

### A.   Standard of Review

In reviewing claims brought under the Act, this Court's role is a limited one.  The Court's review is limited to determining 1) whether the decision of the Secretary is supported by substantial evidence and 2) whether the correct legal standards were applied.[7]  Martin v. Sullivan, 894 F.2d 1520, 1529 (11th Cir. 1990).  A court may not decide the facts anew, reweigh the evidence, or substitute its judgment for that of the Commissioner.  Sewell v. Bowen, 792 F.2d 1065, 1067 (11th

---

[5] At her hearing on July 2, 2013, Plaintiff testified that she no longer drives.  (Tr. 39).

[6] Plaintiff testified that her acid reflux medicine makes her drowsy.  (Tr. 37).

[7] This Court's review of the Commissioner's application of legal principles is plenary.  Walker v. Bowen, 826 F.2d 996, 999 (11th Cir. 1987).

Cir. 1986).   The Commissioner's findings of fact must be affirmed if they are based upon substantial evidence.   Brown v. Sullivan, 921 F.2d 1233, 1235 (11th Cir. 1991); Bloodsworth v. Heckler, 703 F.2d 1233, 1239 (11th Cir. 1983) (holding substantial evidence is defined as "more than a scintilla, but less than a preponderance" and consists of "such relevant evidence as a reasonable person would accept as adequate to support a conclusion.").   In determining whether substantial evidence exists, a court must view the record as a whole, taking into account evidence favorable, as well as unfavorable, to the Commissioner's decision.   Chester v. Bowen, 792 F. 2d 129, 131 (11th Cir. 1986); Short v. Apfel, 1999 U.S. Dist. LEXIS 10163, *4 (S.D. Ala. June 14, 1999).

**B.   Discussion**

An individual who applies for Social Security disability benefits must prove his or her disability.   20 C.F.R. §§ 404.1512, 416.912.   Disability is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months."   42 U.S.C. §§ 423(d)(1)(A); see also 20 C.F.R. §§ 404.1505(a), 416.905(a).   The Social Security regulations provide a five-step sequential evaluation process for

7

determining if a claimant has proven his disability.[8]  20 C.F.R. §§ 404.1520, 416.920.

In the case *sub judice*, the ALJ determined that Plaintiff has not engaged in substantial gainful activity since May 14, 2010, the alleged onset date, and that she has the severe impairment of hypertension.  (Tr. 12).  In addition, the ALJ determined that Plaintiff has the non-severe impairments of obesity, possible borderline intellectual functioning, headaches, gastroesophageal reflux disease, and wrist pain.

---

[8] The claimant must first prove that he or she has not engaged in substantial gainful activity.  The second step requires the claimant to prove that he or she has a severe impairment or combination of impairments.  If, at the third step, the claimant proves that the impairment or combination of impairments meets or equals a listed impairment, then the claimant is automatically found disabled regardless of age, education, or work experience.  If the claimant cannot prevail at the third step, he or she must proceed to the fourth step where the claimant must prove an inability to perform their past relevant work.  Jones v. Bowen, 810 F.2d 1001, 1005 (11th Cir. 1986).  In evaluating whether the claimant has met this burden, the examiner must consider the following four factors: (1) objective medical facts and clinical findings; (2) diagnoses of examining physicians; (3) evidence of pain; and (4) the claimant's age, education and work history.  Id.  Once a claimant meets this burden, it becomes the Commissioner's burden to prove at the fifth step that the claimant is capable of engaging in another kind of substantial gainful employment which exists in significant numbers in the national economy, given the claimant's residual functional capacity, age, education, and work history.  Sryock v. Heckler, 764 F.2d 834, 836 (11th Cir. 1985).  If the Commissioner can demonstrate that there are such jobs the claimant can perform, the claimant must prove inability to perform those jobs in order to be found disabled.  Jones v. Apfel, 190 F.3d 1224, 1228 (11th Cir. 1999).  See also Hale v. Bowen, 831 F.2d 1007, 1011 (11th Cir. 1987) (citing Francis v. Heckler, 749 F.2d 1562, 1564 (11th Cir. 1985)).

(Id. at 12-13).  The ALJ further found that Plaintiff does not have an impairment or combination of impairments that meets or medically equals any of the listed impairments contained in 20 C.F.R. Part 404, Subpart P, Appendix 1.  (Id. at 15).

The ALJ concluded that Plaintiff retains the residual functional capacity (hereinafter "RFC") to perform a full range of work at all exertional levels, except that "she is limited to simple, unskilled, low stress work and would not be required to maintain concentration, persistence, and pace for extended periods of time."  (Id. at 15).  The ALJ also determined that while Plaintiff's medically determinable impairments could reasonably be expected to produce the alleged symptoms, her statements concerning the intensity, persistence and limiting effects of the alleged symptoms were not entirely credible for the reasons explained in the decision.  (Id. at 21).

Given Plaintiff's RFC, the ALJ found that Plaintiff is capable of performing her past work as a kitchen helper (medium and unskilled) and packager (medium and unskilled).  (Id. at 23).  In addition, utilizing the testimony of a VE, the ALJ concluded that considering Plaintiff's residual functional capacity for a full range of work at all exertional levels, as well as her age, education and work experience, there are also other jobs existing in the national economy that Plaintiff is able to perform, such as "janitor," "machine feeder," and

"automobile detailer," all of which are classified as medium and unskilled.  (Id. at 24).  Thus, the ALJ concluded that Plaintiff is not disabled.  (Id.).

In determining whether Plaintiff's mental impairment was severe, the ALJ made the following relevant findings:

> The claimant's medically determinable mental impairment of possible borderline intellectual functioning does not cause more than minimal limitation in the claimant's ability to perform basic mental work activities and is therefore nonsevere.
>
> In making this finding, the undersigned has considered the four broad functional areas set out in the disability regulations for evaluating mental disorders and in section 12.00C of the Listing of Impairments (20 CFR, Part 404, Subpart P, Appendix 1). These four broad functional areas are known as the "paragraph B" criteria.
>
> The first functional area is activities of daily living.  In this area, the claimant has mild limitation.  The claimant completed a function report on June 21, 2010, in which she indicated that the primary problem limiting her activities of work and daily living was pain and cramping in her hand. She reported that aside from hand cramps, she was able to care for her personal needs and perform household chores, such as cooking, cleaning, and laundry.  She further reported that she drove a car, shopped for groceries and other household items, watched television, and helped her children (Exhibit 4E).  In evaluation with Dr. Blanton, she reported cleaning, cooking, driving, shopping, and handling money (Exhibit 11F).
>
> The next functional area is social functioning.  In this area, the claimant has mild limitation.  In her function report,

the claimant stated that she spent time talking with other people every day and went to church every Sunday. She stated that pain and cramps in her right hand limited her participation in social activities, but she indicated that she had no problems getting along with family, friends, neighbors, or authority figures (Exhibit 4E). In evaluation with Dr. Blanton, she reported having a few friends including a boyfriend and attending church on a regular basis. (Exhibit 11F).

The third functional area is concentration, persistence or pace. In this area, the claimant has mild limitation. The claimant indicated in her function report that she was able to pay bills, count change, handle a savings account, and use a checkbook or money orders. She stated that she finished things she started and followed spoken instructions well, but she indicated that hand problems interfered with her ability to follow written instructions. She reported that she had no difficulty handling stress or changes in her routine (Exhibit 4E). In evaluation with Dr. Blanton, she reported cooking, driving, shopping, handling money, attending church, and enjoying the news and talk shows on television (Exhibit 11F).

The fourth functional area is episodes of decompensation. In this area, the claimant has experienced no episodes of decompensation which have been of extended duration. There is no indication or evidence of any episodes of decompensation.

Because the claimant's medically determinable mental impairment causes no more than "mild" limitation in any of the first three functional areas and "no" episodes of decompensation which have been of extended duration in the fourth area, it is nonsevere (20 CFR 404.1520a(d)(1) and 416.920a(d)(1)).

(Tr. 14-15).

In discussing the evidence relating to Plaintiff's intellectual functioning,[9] the ALJ found as follows:

> School records were provided through the tenth grade with no indication of special education classes (Exhibit 8E). . . .
>
> Ellen N. Eno, Ph.D., completed a Psychiatric Review Technique Form on June 30, 2010, following review of the claimant's records of evidence. Dr. Eno assessed the claimant with no medically determinable mental impairments (Exhibit 2F). . . .
>
> Donald W. Blanton, Ph.D., was retained by the claimant's attorney to perform consultative psychological evaluation on April 13, 2011. The claimant alleged carpal tunnel syndrome, migraine headaches, heart problems, and nervous trouble. She reported daily activities including cleaning up and cooking. She reported that she has a driver's license and drives short distances, shops, and handles money. She reported having a few friends including a boyfriend who she sees three times a week. She reported attending church on a regular basis. She reported that she enjoys watching the news and talk shows. The Wechsler Adult Intelligence Scale-IV was administered and yielded a full scale score of 64, placing her in the mild range of mental retardation. The Beck Depression Inventory II was administered and yielded a score of 24, placing her in the moderately depressed range. Dr. Blanton diagnosed anxiety/depression likely due to chronic illness and chronic pain; mild mental

---

[9] The ALJ did not specifically discuss Plaintiff's mental impairment with respect to Listing 12.05C. Rather, he simply determined that Plaintiff's mental impairment was non-severe and that none of her impairments met any Listing. (Tr. 14-15).

retardation; and a global assessment of
functioning of 50.  He assessed the claimant
with marked limitations in maintaining
attention, concentration, and pace for a
period of at least two hours (Exhibit 11F).
. . .

Sydney Garner, Psy.D., completed an
Interrogatory on August 5, 2013, following
review of the claimant's records of
evidence.  Dr. Garner wrote, "There is
actually no diagnosis from a mental health
standpoint.  No emotional disturbance or
treatment for such.  Adaptive functioning
is higher than MR and claimant likely
functions in BIF range- 4E, 11F, 2F.  She
reported that the claimant's impairments do
not meet or equal an impairment in the
listing of impairments, and she elaborated
as follows, "No evidence longitudinal
history of MR & no evidence of any adaptive
deficits consistent with MR based on work
history and functional report -4E and also
based on adaptive capabilities as
established by Dr. Blanton- 11F.  No mental
health treatment or diagnoses from a mental
health professional for mental illness.  A
prescription for Xanax is not indicative of
a mental." (sic)  Dr. Garner was asked to
give a brief summary of the claimant's
allegations and complaints.  She wrote, "Her
complaints all appear to be related to pain.
If there is underlying mood disorder due to
chronic pain, there is no treatment and this
is deemed mild & non-disabling."  She was
asked if medical evidence supports her
allegations, to which she wrote, "Medical
evidence documents complaints of pain but
also is void for treatment of emotional
disturbance.  Evidence documents adequate
adaptive abilities such that MR is not a
possibly." (sic) 4E, 11F.  She wrote that
her conclusion was based on, "Medical
record does not support MR."  She reported
that medical impairments established in the
record do result in limitations of
functioning in a work setting and expounded

as follows, "Academic history and work history indicate claimant is best suited for simple, unskilled work. She could maintain focus in this type of work environment and has no severe mental impairment that would result in any more than moderate limits in ability to maintain concentration, persistence or pace in a work setting. (Exhibit 20F)

After careful consideration of the evidence, the undersigned finds that the claimant's medically determinable impairments could reasonably be expected to cause some of the alleged symptoms; however, the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely credible for the reasons explained in this decision. . . .

As for the opinion evidence, Dr. Blanton's assessment is rejected and given no weight. Dr. Blanton's assessment procured by his attorney finds retardation and depression in a claimant whose records do not indicate or evidence these problems. Specifically, the claimant has raised four children, worked in unskilled jobs where she earned substantial gainful activity seven years and worked four other years under the substantial gainful activity level. Her records from her treating physician [Dr. Clower] repeatedly report the claimant to be fully oriented, with appropriate mood and affect, appropriate judgment, normal insight, and appropriate recent and remote memory (Exhibits 7F and 10F). She also specifically denies depression to her treating physician repeatedly (Exhibits 10F and 18F). Additionally, the claimant related in her Function Report that she cooks, cleans, shops, and is able to pay bills, count change, handle a savings account, and use a checkbook/money orders (Exhibit 4E). Further, the claimant's education records and her Disability Report do not reveal that she attended special

education classes (Exhibits 3E and 8E).

Dr. Garner's assessment is accorded substantial weight. Dr. Garner's assessment is consistent with the records of evidence and supports the rejection of Dr. Blanton's procured assessment. She acknowledged that the claimant might function in the borderline intellectual functioning level, which has been considered in this decision. However, her last line that the claimant does not have a severe mental impairment that would result in any more than a moderate limitation in concentration, persistence, or pace is taken exception to. There is no evidence to suggest the claimant would have a moderate limitation in this area as discussed above.

Dr. Eno's assessment is accorded significant weight. Her assessment is consistent with the records and supports this decision.

In sum, the above residual functional capacity assessment is supported by the records of evidence and the many inconsistencies in the claimant's records and testimony at both hearings. The claimant has undergone numerous tests, which have severed (sic) to demonstrate no disabling impairments. All records have been used in the findings of the claimant's mental and physical abilities.

(Id. at 15-23).  The Court now considers the foregoing in light

of the record in this case and the issue on appeal.

the record in this case and the issue on appeal.

     1.   **Issue**

        **Whether the ALJ erred in rejecting the opinion of examining medical source Dr. Donald W. Blanton, Ph.D., and finding that Plaintiff did not meet Listing 12.05C?**

In this case, Plaintiff claims that the ALJ erred in failing to find that her mental impairment meets the requirements of Listing 12.05C. Specifically, Plaintiff argues that she has satisfied the criteria of Listing 12.05C because she has a valid Full Scale I.Q. score of 64 and a physical impairment that imposes additional and significant work-related limitation of function, *i.e.*, hypertension.  (Doc. 14 at 5-8). Plaintiff also argues that the ALJ erred in failing to apply the rebuttable presumption required by <u>Hodges v. Barnhart</u>, 276 F. 3d 1265, 1268-69 (11th Cir. 2001).  (<u>Id.</u>).  Last, Plaintiff argues that the ALJ erred in discrediting the opinions of consultative examiner Dr. Donald Blanton, Ph.D., that Plaintiff has marked limitations in five functional areas and that she exhibits adaptive deficits in three functional areas.  (<u>Id.</u> at 2).  The Commissioner counters that the evidence of Plaintiff's work history and activities of daily living rebuts any presumption of deficits in adaptive functioning under 12.05C; that the substantial evidence supports the ALJ's findings that Plaintiff's mental impairment is non-severe and does not meet Listing 12.05C; and that the ALJ had good cause to discredit the opinions of Dr. Blanton because they are inconsistent with his own findings, as well as the remaining record evidence in this case.  (Doc. 15 at 4-14).  Having carefully reviewed the record

in this case, the Court finds that the ALJ's decision is supported by substantial evidence.

As stated above, the Social Security regulations set forth a five-step sequential evaluation process to determine whether a claimant is disabled.  At step three, the claimant has the burden of proving that an impairment meets or equals a listed impairment.  See Harris v. Commissioner of Soc. Sec., 330 Fed. Appx. 813, 815 (11th Cir. 2009) (unpublished)[10] (citing Barron v. Sullivan, 924 F.2d 227, 229 (11th Cir. 1991)).  To establish disability under section 12.05C, a claimant must present evidence of "[a] valid verbal, performance or full scale IQ of 60-70 and a physical or other mental impairment imposing an additional and significant work-related limitation of function." 20 C.F.R. Part 404, Subpart P, Appendix 1 § 12.05(C).  In addition, the claimant must also satisfy the 'diagnostic description' of mental retardation in Listing 12.05 (the listing category for mental retardation/intellectual disability),[11] which

---

[10] "Unpublished opinions are not considered binding precedent, but they may be cited as persuasive authority."  11TH CIR. R. 36-2.

[11] On August 1, 2013, the Social Security Administration amended Listing 12.05 by replacing the words "mental retardation" with "intellectual disability."  See Hickel v. Commissioner of Soc. Sec., 539 Fed. Appx. 980, 982 n.2 (11th Cir. 2013) (citing 78 Fed. Reg. 46,499, 46,501, to be codified at 20 C.F.R. pt. 404, subpt. P, app. 1)).  "This change was made because the term 'mental retardation' has negative connotations, and has become offensive to many people.  Id.  (citations and internal

provides that mental retardation "refers to significantly subaverage general intellectual functioning with deficits in adaptive functioning initially manifested during the developmental period; i.e., the evidence demonstrates or supports onset of the impairment before age 22." 20 C.F.R. Part 404, Subpart P, Appendix 1, §§ 12.05.

The law in this Circuit further provides that a valid IQ score of 60-70 after age 22 creates a rebuttable presumption that the claimant manifested deficits in adaptive functioning prior to the age of twenty-two. See Hodges v. Barnhart, 276 F. 3d 1265, 1268-69 (llth Cir. 2001). "[A] claimant meets the criteria for presumptive disability under section 12.05(C) when the claimant presents a valid I.Q. score of 60 to 70 inclusive, and evidence of an additional mental or physical impairment that has more than a 'minimal effect' on the claimant's ability to perform basic work activities." Smith v. Commissioner of Soc. Sec., 535 Fed. Appx. 894, 897 (llth Cir. 2013)(quoting Lowery v. Sullivan, 979 F. 2d 835, 837 (11th Cir. 1992)).

The presumption of deficits in adaptive functioning can be rebutted, however, when the I.Q. score is inconsistent with

quotation marks omitted). "The Social Security Administration stated that the change does not affect the actual medical definition of the disorder or available programs or services." Id. (citations and internal quotation marks omitted). As in Hickel, this opinion uses the term "mental retardation" and "intellectual disability" interchangeably.

record evidence of a claimant's daily activities and behavior. See Popp v. Heckler, 779 F.2d 1497, 1499-1500 (llth Cir. 1986). Accordingly, the ALJ is tasked with determining whether there is sufficient evidence (relating to plaintiff's daily life) to rebut the presumption. See Grant v. Astrue, 255 Fed. Appx 374, 375 (llth Cir. 2007); Hartman v. Colvin, 2014 U.S. Dist. LEXIS 91467, *7, 2014 WL 3058550, *3 (S.D. Ala. July 7, 2014).

Based on the evidence before the Court, the undersigned finds that while the ALJ did not reference or explicitly state that Plaintiff did not meet Listing 12.05C, the ALJ expressly found that Plaintiff does not have an impairment or combination of impairments that meets or medically equals a Listing. (Tr. 15). Moreover, the ALJ discussed at length the reasons for rejecting Dr. Blanton's diagnosis of mental retardation and depression, and he implicitly found that Plaintiff did not meet Listing 12.05C. The ALJ's decision is supported by substantial evidence.

First, the ALJ had good cause for rejecting Dr. Blanton's diagnosis of mental retardation and depression, and his opinions that Plaintiff has marked limitations in maintaining attention, concentration, and pace for a period of at least two hours and that she has demonstrated deficits in adaptive functioning manifesting prior to age 22. In the Eleventh Circuit, a treating physician's opinion must be given substantial weight

unless there is good cause for rejecting the opinion. Crawford v. Commissioner of Soc. Sec., 363 F.3d 1155, 1159 (11th Cir. 2004); Schnorr v. Bowen, 816 F.2d 578, 581 (11th Cir. 1987). The same is not true of a consultative physician. As a general rule, the opinion of a one-time examiner is not entitled to great weight and may be discredited by other evidence in the record. Crawford, 363 F.3d at 1160-61; Stone v. Commissioner of Soc. Sec., 544 F. Appx. 839, 842 (11th Cir. 2013). In particular, the Commissioner's regulations require that the opinions of examining physicians be given more weight than non-examining physicians, the opinions of treating physicians be given more weight than non-treating physicians, and the opinions of specialists (on issues within their areas of expertise) be given more weight than non-specialists. See 20 C.F.R. §§ 404.1527(c)(1)-(2), (5) and 416.927(c)(1)-(2), (5). The foregoing notwithstanding, the ALJ is "free to reject the opinion of any physician [treating, examining, or non-examining] when the evidence supports a contrary conclusion." Sryock v. Heckler, 764 F.2d 834, 835 (11th Cir. 1985) (per curiam) (citation omitted); Phillips v. Barnhart, 357 F.3d 1232, 1240 (11th Cir. 2004)( good cause exists to discredit the testimony of any medical source when it is contrary to or unsupported by the evidence of record); Adamo v. Commissioner of Soc. Sec., 365 Fed. Appx. 209, 212 (11th Cir. 2010)(The ALJ may reject any

medical opinion if the evidence supports a contrary finding.); Hogan v. Astrue, 2012 U.S. Dist. LEXIS 108512, *8, 2012 WL 3155570, *3 (M.D. Ala. Aug. 3, 2012)("Good cause may also exist where a doctor's opinions are merely conclusory, inconsistent with the doctor's medical records, or unsupported by objective medical evidence.").

In this case, Dr. Blanton's diagnosis of anxiety/depression and mild mental retardation was inconsistent with the other findings in his report and with the record evidence.[12]  While Plaintiff had a full scale IQ score of 64, her school records reflect that she was not in special education classes, that she attended school through the tenth grade, and that her grades were average such that she was not required to repeat any grade level.  Also, while Plaintiff testified that she had to take the driver's license test orally four times before successfully completing it, Plaintiff reported that she can read, write and handle her finances.  Moreover, during her examination with Dr. Blanton, Plaintiff described her daily activities as rising at

_____

[12]  As found by the ALJ, Dr. Blanton's diagnosis of anxiety/depression is at odds with the records from Plaintiff's treating physician.  The medical records from Plaintiff's long time treating physician, Dr. Daniel Clower, M.D., repeatedly reflect that Plaintiff was fully oriented, had appropriate mood, affect, and judgment, and that she expressly denied any depression.  (Tr. 22, 440-42, 615-17, 619-20, 623, 625, 627, 629).

5:30 a.m. and caring for her children, including cooking, cleaning, and shopping. Plaintiff also indicated that she takes care of her own personal needs, drives short distances, attends church on a regular basis, and socializes with a few friends, including a boyfriend. Additionally, Plaintiff described a work history that included working in a hospital's dietary department for a year and a half and working at a nursing home for five years. Plaintiff reported that she has never been discharged from a job and that she ceased working due to problems with her hands.

The record further reflects that the ALJ gave substantial weight to the assessment of Dr. Sydney Garner, Psy.D, who reviewed Plaintiff's records, including Dr. Blanton's report. Dr. Garner found that, while Plaintiff might function in the borderline intellectual range, her impairments do not meet or equal a listing. According to Dr. Garner, there was no evidence of longitudinal history of mental retardation and no evidence of any adaptive deficits consistent with mental retardation based on Plaintiff's work history and report of daily activities. Given Dr. Garner's assessment, as well as the other evidence of record, the ALJ had good cause for rejecting Dr. Blanton's opinion that Plaintiff has deficits in adaptive functioning.

The undersigned observes that, in addressing the "adaptive functioning" aspect of Listing 12.05C, the Eleventh Circuit has

sustained the rejection of claims under this Listing where the claimant's IQ score was *significantly* inconsistent with his/her adaptive functioning. For instance, in <u>Perkins v. Commissioner, Soc. Sec. Admin.</u>, 553 Fed. Appx. 870 (11th Cir. 2014), the Eleventh Circuit upheld the ALJ's finding that Listing 12.05C was not met where the plaintiff performed skilled jobs, including as a skilled cook, managed other workers, and made contradictory claims regarding his education and employment history. Also, in <u>Hickel</u>, 539 Fed. Appx. at 984, the Eleventh Circuit held that the ALJ did not err where he acknowledged that the claimant had a valid IQ score between 60 and 70, applied the presumption established by <u>Hodges</u>, and found that the presumption was rebutted by other evidence that showed that the claimant did not have "deficits in adaptive functioning." In reaching that decision, the court noted that, although the claimant had been enrolled in special education classes, she worked part-time in a nursery, was a high school graduate; prepared simple meals, dressed herself, drove herself to work, attended church regularly, and socialized with friends. <u>Id.</u> at 984-985. <u>See also</u>, <u>Popp</u>, 779 F.2d at 1499 (affirming finding that Listing 12.05C was not met where the plaintiff had worked skilled jobs, obtained a college degree, and had exaggerated his deficits when examined); <u>White v. Colvin</u>, 2015 U.S. Dist. LEXIS 28277, 2015 WL 1013117, *4 (S.D. Ala. Mar. 9, 2015) (The ALJ

properly found that the plaintiff did not have significant limitations in adaptive functions where the record reflected that, although the plaintiff had been in special education classes, he lived alone, maintained his financial affairs, and consistently worked at several different jobs); Robinson v. Colvin, 2015 U.S. Dist. LEXIS 43338, 2015 WL 1520431, *11 (S.D. Ala. Apr. 2, 2015) (where the plaintiff lived independently without a highly supportive living arrangement, cared for her personal needs, and had a significant work history, the ALJ properly found that her IQ score was inconsistent with the record evidence regarding her daily activities); Johnson v. Colvin, 2014 U.S. Dist. LEXIS 13497, 2014 WL 413492, *4 (S.D. Ala. Feb. 3, 2014)(although the ALJ never stated that the claimant failed to meet Listing 12.05C, the ALJ's finding that the claimant had high adaptive skills, in that he had the capacity to take care of his own needs, perform activities of daily living, and had successfully performed four different jobs since leaving high school, was sufficient to support his decision that the claimant was not mentally retarded); Lyons v. Astrue, 2009 U.S. Dist. LEXIS 128950 (M.D. Fla. May 24, 2009), adopted by 2009 U.S. Dist. LEXIS 48535, 2009 WL 1657388 (June 10, 2009) (The ALJ's finding that the claimant did not meet Listing 12.05C was supported by substantial evidence that demonstrated that the claimant had a high school diploma, was

not in special education classes, completed his own social security forms, and had earnings from 1983 – 1990 between $13,696 and $18,408 per year).

In this case, the ALJ had good cause for rejecting Dr. Blanton's opinions, and in doing so, he implicitly found that Plaintiff's IQ score was *significantly* inconsistent with her adaptive functioning; thus, she did not meet Listing 12.05C. The Court finds that there is substantial evidence supporting that finding. See O'Neal v. Commissioner, 2015 U.S. App. LEXIS 9640, *8, 2015 WL 3605682, *3 (llth Cir. 2015) (evidence that claimant worked as a dishwasher for many years without receiving any special accommodation or training, helped with light yard work, looked after his two children, independently performed all activities of personal care and daily living, attended church every Sunday, and had a license and drove locally three times a week supported the ALJ's implicit conclusion that the claimant did not have sufficient adaptive functioning to meeting Listing 12.05, notwithstanding his low IQ score.).

V.   **Conclusion**

For the reasons set forth herein, and upon careful consideration of the administrative record and memoranda of the parties, it is hereby **ORDERED** that the decision of the Commissioner of Social Security denying Plaintiff's claim for supplemental security income be **AFFIRMED.**

**DONE** this **22nd** day of **June, 2015.**

                                    **/s/ SONJA F. BIVINS**
                             **UNITED STATES MAGISTRATE JUDGE**